**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JAMES H. SUTTLE, JR. | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | 1:14-cv-20-SEB-MPB |
| | ) | |
| BILL WILSON, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Discussing Petition for a Writ of Habeas Corpus**

Petitioner James H. Suttle, Jr. was convicted by a jury in an Indiana state court of murder. He was sentenced to fifty years' imprisonment for this crime. Mr. Suttle now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues that he is entitled to a new sentencing proceeding in state court because he was denied the effective assistance of trial counsel. The record has been expanded and both parties are represented by counsel.

Mr. Suttle raised his ineffective assistance of counsel claim during post-conviction proceedings in state court. The Indiana Court of Appeals did not address Mr. Suttle's trial counsel's performance, and when assessing whether Mr. Suttle was prejudiced by the alleged deficient performance, applied a standard contrary to *Strickland v. Washington*, 466 U.S. 668 (1984). Therefore, the deference typically afforded under the Antiterrorism and Effective Death Penalty Act does not apply here, making the Court's review *de novo*.

Under *de novo* review, Mr. Suttle has established that he was provided ineffective assistance of counsel. Prior to trial, Mr. Suttle's trial counsel requested that he undergo a mental health examination. Contrary to an order by the trial court, however, his trial counsel did not provide readily available mental health records from the Social Security Administration and

1

Midtown Community Mental Health Center to the evaluating physician. This constitutes deficient performance under the circumstances. Had Mr. Suttle's trial counsel provided these records, the physician's tentative diagnosis of paranoid schizophrenia would have been confirmed, and he would not have implied that Mr. Suttle was malingering.

Mr. Suttle was prejudiced by his trial counsel's misstep. Whether Mr. Suttle suffered from paranoid schizophrenia was an important issue at sentencing. The state trial court recognized Mr. Suttle's mental illness as a mitigating factor, but gave it little weight because the diagnosis was "tentative." Had Mr. Suttle's trial counsel provided the mental health records to the evaluating physician, the trial court would have given more mitigating weight to his mental illness. There is thus a reasonable probability that he would have received a lesser sentence, which is all that is required to establish prejudice.

Mr. Suttle's petition for a writ of habeas corpus is therefore **granted**. He is entitled to a new sentencing proceeding regarding his murder conviction.

## I.
## Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On post-conviction appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> The facts underlying Suttle's conviction of murder were set out in his direct appeal, as follows:
>
> > On May 1, 2007, Suttle spent the evening drinking alcohol with Myeshia Williams, Billy Kilpatrick, and Terry Taylor on Williams' front porch. As they socialized, Taylor was selling crack cocaine to persons who passed the house. At some point, Suttle asked Taylor if Suttle could purchase cocaine on credit, and Taylor declined to give cocaine to Suttle. Suttle said he was going to get money and he would "be right back," and then walked

away laughing and smiling.

After Suttle left, Williams went into her house. Taylor and Kilpatrick went out to the street to listen to music and continue talking. Taylor turned on the radio in his truck and sat on the tailgate, while Kilpatrick leaned against the front of his car facing Taylor. Suttle returned about fifteen minutes after he left, carrying a shotgun. Suttle pointed the shotgun at Taylor and yelled "give me my money." Kilpatrick begged Suttle not to shoot Taylor. Suttle fired a shot into the ground. Taylor put his hands in the air and tried to jump off the truck. Suttle shot Taylor twice in the chest and once in the back. Between shots, Suttle was yelling "what's up now, Terry" and "give me my money." Kilpatrick ran into Williams' house. Before fleeing the scene, Suttle pointed the shotgun at the house and yelled to Kilpatrick that he was next. Taylor died from his gunshot wounds.

The State charged Suttle with murder, and a jury found him guilty. At sentencing, the court found a mitigator in Suttle's mental illness, but did not assign it much weight because a doctor testified the diagnosis was "tentative until further observation." The court also found Suttle's remorse mitigating, his criminal history aggravating, and his probationary status at the time of the crime aggravating. Finding the mitigators outweighed the aggravators, the court sentenced Suttle to fifty years imprisonment.

*Suttle v. State*, No. 49A04–0804–CR–230, slip op. at 1 (Ind. Ct. App. Feb. 25, 2009) [("*Suttle I*")] (footnotes and internal citations omitted).

The facts relevant to the present petition are that before Suttle's trial, trial counsel learned that Suttle suffered from a mental illness. As a result, counsel filed a notice of insanity defense and a request for the appointment of two psychiatrists to evaluate Suttle's mental health. The trial court appointed Drs. George Parker and Roger Perry to evaluate Suttle to determine whether he was competent to stand trial and whether he was able to appreciate the wrongfulness of his actions at the time of the offense. The order concerning the appointment of Drs. Parker and Perry included the following paragraph:

To the extent there exist records of prior treatment of the defendant that defense counsel considers relevant to the competency or sanity examination, DEFENSE COUNSEL IS HEREBY ORDERED to notify you [i.e., Drs. Parker and Perry] of the existence of those records within 7 days. DEFENSE COUNSEL IS FURTHER ORDERED to request production of those records from the appropriate providers within 10 days, and to provide those records to you within 10 days of obtaining the records. The Court is to be provided notice of defense counsel's compliance with the foregoing requirements. IF YOU HAVE BEEN NOTIFIED THAT DEFENSE COUNSEL SEEKS YOUR REVIEW OF PRIOR MEDICAL RECORDS, DO NOT PREPARE A WRITTEN

3

REPORT UNTIL SUCH TIME AS YOU HAVE REVIEWED THOSE
RECORDS.

Direct Appeal Appendix at 47 (emphasis in original). Defense counsel did not
provide notice to the court with respect to the existence of any treatment records
referenced in the order, nor did Dr. Parker receive any documents from counsel
pursuant to this order. Dr. Parker examined Suttle and concluded that Suttle was
competent to stand trial and appreciated the wrongfulness of his actions at the time
the murder was committed. Dr. Parker apparently submitted a report that indicated
a diagnosis of possible schizophrenia. Dr. Perry also submitted a report. Neither
report is included in the appellate record.

At sentencing, Suttle argued that his mental illness was a mitigating factor. The
court discussed its conclusion on that issue as follows:

> The Court will find as mitigating the fact that you have expressed remorse,
> the fact that you do suffer some form of mental illness. The Court is going
> to give your—your mental illness minimal weight because according to
> Dr. Parker, your diagnosis of paranoid schizophrenia should be considered
> tentative until you were [sic] either observed over a longer period of time
> or additional medical records become available.

Trial Transcript at 331–32. Upon its finding that the mitigating factors outweighed
the aggravating factors, the trial court sentenced Suttle to fifty years, which is five
years less than the advisory sentence for murder. *See* Ind. Code Ann. § 35-50-2-
3(a) (West, Westlaw current through P.L. 171 with effective dates through May 7,
2013).

As it turned out, Social Security and Midtown Mental Health records were then
available that were relevant to the question of Suttle's mental illness. At the post-
conviction hearing, Dr. Parker testified that had he reviewed those records at the
time, he would have definitively confirmed the tentative diagnosis that Suttle
suffered from paranoid schizophrenia. Suttle filed his pro se PCR petition on
November 30, 2009, and amended the petition once before a hearing was
conducted. Following the hearing, the court denied Suttle's petition, which is the
ruling that Suttle now appeals. Suttle contends trial counsel rendered ineffective
assistance in failing to provide Drs. Parker and Perry with mental health records for
use in their evaluation of his mental health.

*Suttle v. State*, 989 N.E.2d 845, 2013 WL 3147265, *1-2 (Ind. Ct. App. 2013) ("*Suttle II*").

The *Suttle II* court affirmed the denial of post-conviction relief. *See id.* at *5. Mr. Suttle

filed a petition to transfer with Indiana Supreme Court. The Indiana Supreme Court denied transfer

on September 13, 2013. *See Suttle v. State*, 993 N.E.2d 1150 (Ind. 2013). Mr. Suttle timely filed

4

the instant petition for a writ of habeas corpus with this Court.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Mr. Suttle's petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to AEDPA, "the critical question on the merits of most habeas corpus petitions shifted from whether the petitioner was in custody in violation of the Constitution, laws, or treaties of the United States to a much narrower question: whether the decision of the state court keeping the petitioner in custody was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts . . . .'" *Avila v. Richardson*, 751 F.3d 534, 535 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)).

> A decision is contrary to clearly established federal law if the state court applies a rule that conflicts with a rule identified by the Supreme Court, or if the state court reaches a different conclusion than the Supreme Court in a case with materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A decision involves an unreasonable application of clearly established law if the state court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under both tests, mere error is not sufficient; a state court's decision must be "objectively unreasonable." *Lockyer v. Andrade,* 538 U.S. 63, 76, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003).

*Simonson v. Hepp*, 549 F.3d 1101, 1105-06 (7th Cir. 2008). If either test is met as to a given claim, the federal habeas court reviews that claim "under the pre-AEDPA standard of 28 U.S.C. § 2243 and dispose[s] of the matter 'as law and justice require,' which is essentially *de novo* review." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015).

**III.**
**Discussion**

Mr. Suttle raises a single claim in his habeas petition: whether his trial counsel provided ineffective assistance by failing to provide to the evaluating physician Mr. Suttle's relevant mental health records, as ordered to by the state trial court.

A defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland*, 466 U.S. at 687. For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694).

The Indiana Court of Appeals in *Suttle II* only addressed the prejudice prong of *Strickland*, concluding that it was not met. *See* 2013 WL 3147265 at *3-4. The parties dispute whether Mr. Suttle can establish both elements of his ineffective assistance of counsel claim, so the Court will address each in turn.

**A.  Performance**

*1.    Standard of Review*

Mr. Suttle argues that this Court should review the performance prong *de novo* because the *Suttle II* court did not address it. Mr. Suttle is correct that the Indiana Court of Appeals did not address his trial counsel's performance. The respondent, however, contends that the state post-conviction court addressed performance and that its assessment of performance must be reviewed

6

through AEDPA's deferential lens. Specifically, the respondent relies on cases stating that a habeas court applying AEDPA must look to the last state court opinion addressing each claim. [Filing No. 13 at 12 (citing *Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012)).] In essence, the respondent's position is that this Court should look to the state post-conviction court's performance adjudication and the Indiana Court of Appeals' prejudice adjudication and review each under AEDPA.

The very case on which the respondent relies demonstrates that his position is untenable. In *Woolley*, the Seventh Circuit was confronted with a similar argument. There, the respondent argued that the habeas court "should apply AEDPA deference to *both* prongs of the [*Strickland*] test and presume that the appellate court found defense counsel's representation adequate even though it remained silent on attorney performance." *Woolley*, 702 F.3d at 421. On the other hand, the petitioner maintained that "under AEDPA [the habeas court] must defer to the state trial court's determination that defense counsel *was* ineffective," even though it ultimately denied relief on the prejudice prong. *Id.* The Seventh Circuit concluded that both parties' positions were incorrect. It reasoned that "[w]hen a state collateral review system issues multiple decisions, we typically consider the last reasoned opinion on the claim—here the opinion of the Illinois Appellate Court. Unless a state-court opinion adopts or incorporates the reasoning of a prior opinion, AEDPA generally requires federal courts to review one state decision." *Id.* at 421-22 (citation and quotation marks omitted); *see id.* at 422 n.1 ("'[T]he Supreme Court describes AEDPA review as applying to a single state court decision, not to some amalgamation of multiple state court decisions.'" (quoting *Barker v. Fleming*, 423 F.3d 1085, 1093 (9th Cir. 2005))).

The last-reasoned state court opinion here is that of the Indiana Court of Appeals in *Suttle II*. The *Suttle II* court denied Mr. Suttle relief on the prejudice prong without addressing the

performance prong or adopting the post-conviction court's reasoning with respect to it. Therefore, just as in *Woolley*, the Indiana Court of Appeals decision in *Suttle II* constitutes "the 'last reasoned opinion' [the Court] review[s] under AEDPA. Because [it] did not reach *Strickland*'s ineffectiveness prong, [the Court] . . . review[s] the issue de novo." *Id.* at 422; *see also Porter v. McCollum*, 558 U.S. 30, 38 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005).

> 2.    *Merits*

Mr. Suttle's ineffective assistance claim focuses on his trial counsel's failure to provide relevant mental health records for Dr. Parker's use in evaluating Mr. Suttle's mental health. The Court will therefore begin with a brief summary of his trial counsel's performance regarding his mental health issues, before turning to trial counsel's testimony during the state post-conviction proceedings.

As explained in *Suttle II*, Mr. Suttle's trial counsel "learned that Suttle suffered from a mental illness," and "[a]s a result, counsel filed a notice of insanity defense and a request for the appointment of two psychiatrists to evaluate Suttle's mental health. The trial court appointed Drs. George Parker and Roger Perry to evaluate Suttle to determine whether he was competent to stand trial and whether he was able to appreciate the wrongfulness of his actions at the time of the offense." 2013 WL 3147265, at *1. The trial court ordered Mr. Suttle's trial counsel to provide Drs. Parker and Perry any "records of prior treatment" that would be relevant to their examinations. *Id.* at *2. But trial counsel "did not provide notice to the court with respect to the existence of any treatment records referenced in the order, nor did Dr. Parker receive any documents from counsel pursuant to this order." *Id.* "Dr. Parker examined Suttle and concluded that Suttle was competent to stand trial and appreciated the wrongfulness of his actions at the time the murder was committed.

Dr. Parker apparently submitted a report that indicated a diagnosis of possible schizophrenia. . . . [but this] report [wa]s [not] included in the [state] appellate record." *Id.*

At the sentencing hearing, Mr. Suttle's trial counsel did not present any additional evidence; she instead presented only argument. Her primary argument was that Mr. Suttle's mental illness was a mitigating factor. *See* Trial Tr. at 326-30.[1] Trial counsel noted that Mr. Suttle's mental illness did not "rise to [the] level . . . [of] a defense in this case," but that it certainly was an important factor in sentencing because someone such as Mr. Suttle who has "been diagnosed as paranoid schizophrenic" would "certainly [have] impair[ed] . . . judgment." Trial Tr. at 326.

The trial court agreed that Mr. Suttle's mental illness was a mitigating factor. However, the trial court gave Mr. Suttle's "mental illness minimal weight because according to Dr. Parker, [the] diagnosis of paranoid schizophrenia should be considered tentative until [Mr. Suttle was] either observed over a longer period of time or additional medical records became available." *Id.* at 332.

At the state court post-conviction hearing, Mr. Suttle's trial counsel submitted a short affidavit in lieu of testifying. She stated that "[s]ometime pre-trial, either through my own observations or through information from Mr. Suttle, I became aware that Mr. Suttle was suffering from a mental illness. I recall asking the court to order an examination and that this examination was conducted." PCR Appx. at 72. She did not recall the mental health professionals' specific conclusions, but based on them, she concluded that "Mr. Suttle's mental illness was not an issue for trial." *Id.* With respect to sentencing, Mr. Suttle's trial counsel attests that she "did raise Mr.

---

[1] The Court uses the following citation format when citing to the state court records: "Trial Tr." for the trial record, "PCR Tr.," for the post-conviction hearing transcripts, "Aplt. Appx." for the state court appellate appendix, and "PCR Appx." for the post-conviction appendix.

Suttle's mental illness during the sentencing hearing and [she] believe[s] the judge took his mental illness into account in imposing sentence." *Id.*

In light of the foregoing, Mr. Suttle argues that his trial counsel provided deficient performance by not obtaining relevant mental health records from the Social Security Administration ("SSA") and Midtown Community Mental Health Center ("Midtown") and providing them to Dr. Parker as ordered by the trial court.

The Supreme Court has made clear that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521. This includes the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. The duty to make reasonable investigations is present not only before and during trial, but also in preparation for sentencing. *See Pruitt v. Neal*, 788 F.3d 248, 271-73 (7th Cir. 2015). With respect to clients that suffer from a mental illness, when it is "apparent" to defense counsel "that the defendant has some mental or other condition that will repay further investigation . . . then the failure to investigate will be ineffective assistance." *Brown v. Sternes*, 304 F.3d 677, 693 (7th Cir. 2002); *see Burt v. Uchtman*, 422 F.3d 557, 568-69 (7th Cir. 2005) ("The failure by defense counsel to investigate apparent problems with a defendant's mental health may be deficient performance as defined by the first prong of *Strickland*.").

There is no disagreement regarding whether Mr. Suttle's trial counsel knew that Mr. Suttle's mental illness was an important issue for sentencing. Although the evaluations revealed that Mr. Suttle's his mental illness was not an available defense at trial, his counsel raised his mental illness as a mitigating factor during sentencing and reiterated its importance in her affidavit submitted during post-conviction proceedings. This is consistent with Indiana law, which

recognizes that mental illness can have a powerful mitigating effect, even when not a viable defense at trial. *See Gambill v. State*, 675 N.E.2d 668, 678 (Ind. 1996) (reducing a murder sentence from sixty years to forty years because the defendant had paranoid schizophrenia that, "while not a defense to the crime, [was] of substantial mitigating value"). The question is thus whether, given the potential mitigating value of Mr. Suttle's mental illness, his trial counsel conducted a reasonable investigation into his mental health issues.

The record reflects that Mr. Suttle's trial counsel clearly did *some* investigation regarding his mental health; she, after all, was the one who suggested to the trial court that Mr. Suttle undergo a pre-trial mental health evaluation. The trial court thus ordered Mr. Suttle to be evaluated and ordered his trial counsel to provide the evaluating doctors with any records "relevant" to the mental health examination and to give the Court notice of compliance with the order. *See Suttle II*, 2013 WL 3147265, at *2. As noted by the *Suttle II* court, however, "[d]efense counsel did not provide notice to the court with respect to the existence of any treatment records referenced in the order, nor did Dr. Parker receive any documents from counsel pursuant to this order," even though mental health records from the SSA and Midtown were "then available." *Id.* Nor did Mr. Suttle's trial counsel update any of the evidence for the sentencing proceeding; she simply presented argument regarding Mr. Suttle's mental illness based on the pre-trial evaluations. Dr. Parker never saw Mr. Suttle's SSA or Midtown mental health records until the post-conviction proceedings.

Mr. Suttle's trial counsel's failure to present the readily available and clearly relevant SSA and Midtown mental health records to Dr. Parker constitutes deficient performance.[2] Three

---

[2] The Court recognizes that, although the purpose of the pre-trial evaluation was directed at determining Mr. Suttle's competency and whether he appreciated the wrongfulness of his conduct, Mr. Suttle's claim is that his counsel's deficient investigation prejudiced him at sentencing. But

factors each contribute, and together inescapably lead, to the conclusion that trial counsel's failure was unreasonable under prevailing professional norms: (1) the failure to produce the mental health records violates the American Bar Association ("ABA") Guidelines for criminal defense counsel; (2) trial counsel's failure to provide these records to Dr. Parker violated a direct and explicit order of the trial court; and (3) the particular circumstances of this case would lead a reasonable defense attorney to investigate and obtain relevant mental health records and provide them to Dr. Parker. Each contributing factor is discussed in turn.

First, "*Strickland* particularly referred to '[p]revailing norms of practice as reflected in American Bar Association standards' as 'guides to determining what is reasonable.'" *Stevens v. McBride*, 489 F.3d 883, 895 (7th Cir. 2007) (*Strickland*, 466 U.S. at 688); *see Wiggins*, 539 U.S. at 524 (relying on the ABA Guidelines when evaluating *Strickland*'s performance prong). The ABA Guidelines provide generally that "[d]efense counsel should gather and submit to the . . . court as much mitigating information relevant to sentencing as reasonably possible." ABA Criminal Justice Standards for the Defense Function § 4-8.3(d). They also state more specifically that "[i]n many cases, defense counsel should independently investigate the facts relevant to sentencing, . . . and should seek discovery or relevant information from governmental agencies or third-parties if necessary." *Id.* § 4-8.3(e).

The record makes clear that Mr. Suttle's trial counsel did not comply with these standards. Trial counsel either located the SSA and Midtown records and chose not to provide

---

this does not affect the viability of his claim. Even if trial counsel's failure to provide the mental health records for the pre-trial evaluation was justified because the evaluation's purpose related to a possible defense at trial (a dubious justification to not provide relevant records, at best, and not one the respondent offers), trial counsel would have then had an obligation to present a fuller picture of Mr. Suttle's mental illness at sentencing, given that it can be a strong mitigating factor even when not a viable defense. *See Gambill*, 675 N.E.2d at 678.

them to Dr. Parker or never located them in the first place. Given the obvious relevance of the records—as recognized by the Indiana Court of Appeals in *Suttle II*, 2013 WL 3147265, at *2 and undisputed by the parties—the latter is much more likely. But either of these possibilities represents a failure to comply with ABA Guidelines.

If it was the former, trial counsel simply failed to present readily available and relevant evidence regarding Mr. Suttle's mental illness to Dr. Parker. This evidence was not only relevant to Mr. Suttle's pre-trial competency evaluation, but also, as important here, to his trial counsel's main argument in mitigation at sentencing. Such a failure clearly violates trial counsel's obligation to present "as much mitigating information relevant to sentencing as reasonably possible." ABA Criminal Justice Standards for the Defense Function § 4-8.3(d). If it was the latter, trial counsel failed to "independently investigate the facts relevant to sentencing" by seeking "relevant information from governmental agencies or third-parties" such as the SSA and Midtown. *Id.* § 4-8.3(e).

Although trial counsel's failure to follow the ABA Guidelines contributes to the conclusion that her performance was unreasonable, "a court's ultimate determination of counsel's effectiveness must be grounded in the specific circumstances of the case." *Stevens*, 489 F.3d at 895. The specific circumstances of this case confirm that trial counsel's failure was unreasonable.

Not only did trial counsel violate the ABA Guidelines, she also failed to comply with a direct order from the trial judge.[3] Once trial counsel raised Mr. Suttle's competency to stand trial,

---

[3] Mr. Suttle argues that it should constitute *per se* deficient performance if trial counsel fails to comply with a court order. Although the Court finds no legal support for such a rule, given that counsel's performance is measured in all cases by reasonableness under the circumstances, *see Stevens*, 489 F.3d at 895, the Court need not ultimately decide whether to adopt such a rule, given the Court's ultimate conclusion that Mr. Suttle received ineffective assistance of counsel.

the trial judge ordered as follows: "To the extent there exist records of prior treatment of the defendant that defense counsel considers relevant to the competency or sanity examination, DEFENSE COUNSEL IS HEREBY ORDERED to notify you [i.e., Drs. Parker and Perry] of the existence of those records within 7 days." Aplt. Appx. at 47. Again, it is undisputed that "[d]efense counsel did not provide notice to the court with respect to the existence of any treatment records referenced in the order, nor did Dr. Parker receive any documents from counsel pursuant to this order," but "[a]s it turned out, [SSA] and Midtown Mental Health records were then available that were relevant to the question of [Mr.] Suttle's mental illness." *Suttle II*, 2013 WL 3147265, at *2. Thus, not only did trial counsel's failure to produce these records violate the ABA Guidelines, but it also violated a direct order from the trial court.

Third and finally, regardless of trial counsel's failure to produce the SSA and Midtown mental health records to Dr. Parker for the pre-trial evaluation pursuant to the trial court's order, Dr. Parker's initial report should have alerted trial counsel of the need to either provide Dr. Parker the records at issue (if trial counsel had located and read them) or further investigate Mr. Suttle's history of mental health issues (if she had not). Dr. Parker testified that his initial report "raises the possibility [that Mr. Suttle] was malingering." PCR Tr. at 16. Furthermore, as described by the trial judge at sentencing, Dr. Parker's initial report stated that Mr. Suttle's "diagnosis of paranoid schizophrenia should be considered tentative until [he was] either observed over a longer period of time or additional medical records become available." Trial Tr. at 332. Thus, Dr. Parker's initial report should have clearly put Mr. Suttle's trial counsel on notice that she needed to investigate whether additional medical records were available that would bolster Dr. Parker's tentative diagnosis. Whether she failed to conduct a reasonable investigation or simply decided not to utilize relevant evidence does not matter, as neither course was reasonable under prevailing professional

norms.[4]

The foregoing three factors demonstrate that Mr. Suttle's trial counsel rendered deficient performance by not providing Dr. Parker with the relevant and readily available mental health records from the SSA and Midtown. Not only did Mr. Suttle's trial counsel likely fail to comply with a direct order from the trial court, but she violated the ABA Guidelines for criminal defense attorneys and failed to follow up on the obvious issue left open by Dr. Parker's initial report regarding the possibility that Mr. Suttle was malingering and that further medical records could confirm the tentative diagnosis.

The respondent resists this conclusion on two grounds, neither of which is persuasive. First, the respondent contends that Mr. Suttle's trial counsel investigated his mental health issues and argued at sentencing that they were a mitigating factor, which was adequate performance under the circumstances. But an assertion that trial counsel pursued an issue generally is of little value, as "it is the facts of the particular case . . . that matter." *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007). Although Mr. Suttle's trial counsel raised Mr. Suttle's mental health as a mitigating factor at sentencing, she failed to present the readily available evidence that would have significantly strengthened the persuasive value of her argument. Raising an argument generally does not insulate trial counsel from unreasonably failing to investigate and present a more persuasive version of that argument. *See id.* at 963-64 (holding that an attorney provided deficient performance by only calling one alibi witness when there were several others available). And for

---

[4] Notably, the respondent does not proffer *any* possible strategic reason Mr. Suttle's trial counsel could have had for not providing the relevant mental health records to Dr. Parker, nor did trial counsel do so in her affidavit submitted during the post-conviction proceeding. This is likely because it is difficult to conceive of any possible strategic reason for defense counsel to withhold relevant evidence that the defendant suffers from a mental illness when defense counsel obviously thought it was a possible avenue of defense at trial, and more importantly here, thought it was a strong mitigating factor at sentencing.

the reasons explained above, Mr. Suttle's trial counsel failed to produce the readily available evidence that would have enabled her to present a more compelling mental health argument at sentencing.

Second, the respondent points to *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013), where the Supreme Court stated that "[t]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Id.* at 17 (quoting *Strickland*, 466 U.S. at 689). The respondent relies on this statement to argue that, since there is an absence of evidence as to whether Mr. Suttle's trial counsel actually obtained and reviewed the SSA and Midtown records, this Court cannot assume that such a review did not occur. But the Court need not make such an assumption. As explained above, trial counsel's performance was deficient whether or not she obtained and reviewed the records at issue. The value of these records in providing a definitive mental health diagnosis by Dr. Parker and the mitigation value of such a diagnosis at sentencing are indisputable. If trial counsel located the records, her decision to not submit evidence that the *Suttle II* court acknowledged was relevant—and which Dr. Parker's testimony demonstrates was critical—would itself be unreasonable and thus deficient performance. And if she did not locate them, her failure to locate evidence that the *Suttle II* court described as then "available" and "relevant" constitutes an unreasonable investigation and thus deficient performance. These conclusions, unlike the situation in *Burt*, are based on the record evidence and undisputed factual findings of the state court, not a complete absence of evidence. *Cf. id.* at 17-18 (holding that the Sixth Circuit erred in concluding that trial counsel provided ineffective assistance by failing to provide "constitutionally adequate advice on whether to

withdraw the guilty plea" based on the absence of evidence that the advice was given).[5]

In sum, Mr. Suttle has overcome the strong presumption that counsel rendered adequate performance by pointing to evidence that his trial counsel unreasonably failed to produce readily available and relevant evidence. The Court must therefore turn to the question of whether Mr. Suttle was prejudiced by his trial counsel's failure.

**B.   Prejudice**

*1.   Standard of Review*

AEDPA provides that a writ of habeas corpus cannot be granted regarding a given claim unless "the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C § 2254(d). The *Suttle II* court addressed the prejudice prong of Mr. Suttle's ineffective assistance of counsel claim. Normally, this limits federal courts "to a deferential review of the reasonableness . . . of a state court decision." *Mosley*, 689 F.3d at 844. Mr. Suttle, however, contends that the state court's adjudication of the prejudice prong resulted in a decision that was contrary to clearly establish federal law. If this is true, "that decision is not

---

[5] The respondent also points out that trial counsel's overall performance must be evaluated, not simply any alleged mistakes. The respondent is correct that, in assessing trial counsel's performance, "[i]t is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Nevertheless, a "single error may suffice if that error is sufficiently egregious and prejudicial." *Id.* (citation and quotation marks omitted). For the reasons explained above, the trial counsel's error in this case was sufficiently egregious. Trial counsel knew that Mr. Suttle's mental illness was potentially an important issue at trial and certainly an important issue at sentencing, but she failed to produce critical mental health records that were readily available, despite a direct court order to do so.  But even if this error was not sufficiently egregious, counsel's overall sentencing performance was deficient: her argument rested primarily on Mr. Suttle's mental illness as a mitigating factor but failed to perform a basic investigation—one that was specifically ordered by the trial court—in order to present a persuasive argument on this point.

entitled to the usual AEDPA deference and is therefore reviewed *de novo*." *Id.*

A state court's decision is "contrary to" federal law under § 2254(d) if it is "substantially different from the relevant precedents" of the Supreme Court or "contradicts the governing law" set forth in Supreme Court cases. *Williams*, 529 U.S. at 405; *see Mosley*, 689 F.3d at 844. If a state court merely recites the incorrect legal standard, but rests its analysis on the correct legal standard, such a decision is not "contrary to" federal law. *Carter v. Duncan*, 819 F.3d 931, 944-45 (7th Cir. 2016); *see Floyd v. Hanks*, 364 F.3d 847, 852-53 (7th Cir. 2004) (noting that, although the state court referenced the wrong standard, its "actual analysis" shows that it applied the *Strickland* standard).

To adequately assess whether the *Suttle II* court applied *Strickland*, the Court sets out in full its prejudice analysis:

> A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea v. State*, 983 N.E .2d 1134 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 1138 (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 1139. There is a "strong presumption" that counsel rendered adequate service. *Id.* Because a petitioner must prove both elements in order to succeed, the failure to prove either element defeats the claim. *See Young v. State*, 746 N.E.2d 920 (Ind. 2001) (holding that because the two elements of *Strickland* are separate and independent inquiries, the court may dispose of the claim on the ground of lack of sufficient prejudice if it is easier).

> Dr. Parker testified at the post-conviction hearing that if he had reviewed Suttle's Social Security and Midtown Mental Health records at the time of his evaluation of Suttle, his diagnosis would have changed from possible paranoid schizophrenia to paranoid schizophrenia. Suttle contends that this change in the assessment would have caused the court to assign a greater mitigating weight to Suttle's mental illness, which in turn would have resulted in a lesser sentence. In point of fact, the trial court found that Suttle "do[es] suffer some form of mental illness." Trial

Transcript at 332. Moreover, the court was aware via Dr. Parker's report of the possibility that Suttle's form of mental illness might be paranoid schizophrenia. Although the comments recited previously in this opinion are susceptible to a contrary construction, we are not persuaded that Suttle has established with the requisite certainty that the sentence imposed upon the corrected classification would have been reduced even further than his current sentence.

Because Suttle appeals from a negative judgment and his appeal turns on factual issues, he will prevail only if he convinces us that the evidence "as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003). In other words, he must convince us "that there is no way within the law that the court below could have reached the decision it did." *Id.* (emphasis in original). In the context of this case, this means he must establish that there is no way the post-conviction court could have concluded that the trial court would not have further reduced Suttle's sentence had a definitive classification of his mental illness (i.e., paranoid schizophrenia) been provided to the court.

The trial court affirmatively found as a mitigator that Suttle has a mental illness. Although the court was not inclined to assign it great weight, the court determined that the combined weight of it and the only other mitigator—Suttle's remorse—outweighed the aggravating circumstances and justified a sentence less than the advisory. Would the confirmed diagnosis of paranoid schizophrenia have changed the calculus enough to prompt a further reduction in the sentence? Upon review, the question we must answer is not whether the court could or would have reduced the sentence. Rather, the question is whether we can say there is no way the court would have failed to reduce the sentence. *See Stevens v. State*, 110 N.E.2d 739.

Our Supreme Court has noted, "[w]hat is brought out [during the penalty phase] that will help [a defendant] is what goes to show that he is not as 'bad' a person as one might have thought from the evidence in the guilt phase of the proceeding." *Id.* at 755 (quoting *Stewart v. Gramley*, 74 F.3d 132, 136 (7th Cir. 1996), *cert. denied*, 519 U.S. 838). Mental illness as a mitigator may warrant less weight where the nexus between the defendant's mental illness and the commission of the crime is not clear. *See Archer v. State*, 689 N.E.2d 678 (Ind. 1997). Suttle and the others involved in this incident had been drinking throughout the evening on the night Taylor was murdered. There is no suggestion that Suttle's mental illness was a precipitating factor in the shooting. In fact, Suttle defended on a theory of self-defense and the parties were forbidden by an order in limine from mentioning his history of mental illness. Finally, we note that Dr. Parker testified at the post-conviction hearing that although the records would have caused him to confirm the tentative diagnosis of paranoid schizophrenia, they would not have altered his conclusions that Suttle was competent to stand trial and was able to appreciate the wrongfulness of his actions at the time of the offense.

Because there is no clear nexus between the shooting and Suttle's mental illness,

we cannot say that there is no way within the law that the post-conviction court could have reached the conclusion that the sentence imposed by the trial court would have remained the same even with a definitive diagnosis of paranoid schizophrenia.

*Suttle II*, 989 N.E.2d 845, 2013 WL 3147265 at *3-4.

The first paragraph of the *Suttle II* court's prejudice analysis reveals that it correctly acknowledged the familiar *Strickland* standards. But "more than a correct citation is needed to avoid a decision 'contrary to' clearly established federal law." *Stevens v. McBride*, 489 F.3d 883, 907 (7th Cir. 2007). The Court must look beyond mere recitations of *Strickland* and examine whether the Indiana Court of Appeals' *analysis* was consistent with *Strickland*. *See Eckstein v. Kingston*, 460 F.3d 844, 851 (7th Cir. 2006) ("[W]hat is important is that the [state court's] overall reasoning is consistent with *Strickland*.").

The *Suttle II* court begins its analysis by discussing the evidence relevant to prejudice, and it acknowledged the evidence is "susceptible to a contrary construction," but that it is "not persuaded that Suttle has established with the *requisite certainty* that the sentence imposed . . . would have been reduced even further than his current sentence." *Suttle II*, 2013 WL 3147265, at *3 (emphasis added). Mr. Suttle contends that the reference to "requisite certainty" shows that the state court imposed a showing greater than that required by *Strickland*, while the respondent maintains that this is simply a "squabble over semantics." [Filing No. 13 at 14.]

The *Suttle II* court's subsequent analysis elucidates that at issue is more than a semantical squabble; instead, the state court required Mr. Suttle to make a stronger showing of prejudice than required by *Strickland*, and thus its decision was "contrary" to federal law.

Recall that *Strickland*'s prejudice prong requires a defendant to "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Wiggins*, 539 U.S. at 534 (quoting *Strickland*, 466 U.S. at 694). The

20

*Suttle II* court, however, required Mr. Suttle to "convince [it] that there is *no way* within the law that the court below could have reached the decision it did," and more specifically, that "[i]n the context of this case, this means he must establish that there is no way the post-conviction court could have concluded that the trial court would not have further reduced Suttle's sentence had a definitive classification of his mental illness (i.e., paranoid schizophrenia) been provided to the court." *Suttle II*, 2013 WL 3147265, at *4 (citations and quotation marks omitted). This is a much higher showing than *Strickland* requires: instead of having to show a *reasonable probability* that his sentence would have been different, the state court required him to show that there was *no way* the post-conviction court could have concluded that the trial court would not have further reduced his sentence.

In the very next paragraph the *Suttle II* court again re-emphasized what it believed to be the relevant question: "Would the confirmed diagnosis of paranoid schizophrenia have changed the calculus enough to prompt a further reduction in the sentence? Upon review, the question we must answer is not whether the court could or would have reduced the sentence. Rather, the question is whether we can say *there is no way the court would have failed to reduce the sentence*." *Suttle II*, 2013 WL 3147265, at *4 (emphasis added). But again, *Strickland* only requires Mr. Suttle to show *a reasonable probability* that the trial court would have imposed a lower sentence. *See Strickland*, 466 U.S. at 694. In other words, Mr. Suttle did not have to show, as the *Suttle II* court required, that the trial court would have imposed a lower sentence; a proper application of *Strickland* required only a showing that there was a reasonable probability this would occur.

These incorrect statements in *Suttle II* of the governing legal standard and its application to Mr. Suttle's arguments were not isolated mistakes such that, as in many cases, "it is more likely that the [state] court stated its conclusion imprecisely than that it applied a different standard."

*Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006); *see Allen v. Chandler*, 555 F.3d 596, 601 (7th Cir. 2009). The *Suttle II* court went on to *apply* the incorrect standard that it articulated.

The *Suttle II* court noted that "[m]ental illness as a mitigator may warrant less weight where the nexus between the defendant's mental illness and the commission of the crime is not clear," and, here, the court reasoned, there was no clear nexus between Mr. Suttle's illness and the murder he committed. *Suttle II*, 2013 WL 3147265, at *4. This was ostensibly the *Suttle II* court's method of explaining that the post-conviction court could conceive of a way that the trial court could, within the law, discount Mr. Suttle's mental health as a mitigating factor regardless of whether his schizophrenia diagnosis was confirmed.[6] This mode of analysis fails to confront— implicitly or otherwise—the prejudice analysis required by *Strickland*, which asks not whether there was a basis to not reduce his sentence despite the confirmed diagnosis, but whether there is a *reasonable probability* he would have received a lower sentence in light of the confirmed diagnosis. The concluding sentence of the *Suttle II* court's opinion removes any doubt as to whether it was applying the correct standard: "Because there is no clear nexus between the shooting and Suttle's mental illness, we cannot say that there is no way within the law that the post-conviction court could have reached the conclusion that the sentence imposed by the trial

---

[6] The respondent suggests that the *Suttle II* court's reliance on Indiana law for the proposition that mental illness may warrant less weight as a mitigator if there is no clear nexus between the mental illness and the crime is a determination of state law that cannot be displaced by a federal habeas court. This argument misses the mark. This Court has no reason to quibble with or doubt that this statement is a correct and fully applicable statement of Indiana law. The problem with the *Suttle II* court's reliance on this law is that it reveals that it failed to apply the *Strickland* standard by discerning a legal basis for which the trial court could give Mr. Suttle the same sentence. In other words, the state court's reference to state law reveals whether or not it was applying *Strickland*— that is, whether it was applying a standard "contrary to" federal law. This is an inquiry the Court is required to undertake under § 2254(d). Therefore, this Court's conclusion that the *Suttle II* court was applying a standard contrary to *Strickland* is not premised, directly or indirectly, on an "error[] of state law," which would of course be impermissible on federal habeas review. *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010).

court would have remained the same even with a definitive diagnosis of paranoid schizophrenia." *Id.*

For these reasons, the respondent is simply incorrect to refer to Mr. Suttle's concern regarding the legal standards applied as a squabble over semantics. The difference between the standard applied by the *Suttle II* court and the reasonable probability standard of *Strickland* is "not a mere detail or a quibble over word-smithing." *Mosley*, 689 F.3d at 850. Indeed, the *Suttle II* court's requirement that Mr. Suttle essentially show that the trial court would have further reduced his sentence imposes a standard similar to those that the Supreme Court and Seventh Circuit have recognized as "contrary to" *Strickland*. *See Williams*, 529 U.S. at 405-06 ("If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be [contrary to] our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a 'reasonable probability that . . . the result of the proceeding would have been different.'"); *see also Mosley*, 689 F.3d at 850; *Martin v. Grosshans*, 424 F.3d 588, 592 (7th Cir. 2005).

In sum, the *Suttle II* court applied a standard contrary to *Strickland*. This Court must therefore review the prejudice prong *de novo*. *Mosley*, 689 F.3d at 851.

2.    *Merits*

"[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Wiggins*, 539 U.S. at 534 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome,'" *Mosley*, 689 F.3d at 851 (quoting *Strickland*, 466 U.S. at 694), but "it needn't be a 50 percent or greater chance."

23

*Stanley*, 465 F.3d at 814.

Applying *Strickland* to the facts of this case requires the Court to determine whether there is a reasonable probability that Mr. Suttle would have received a lower sentence had his trial counsel's performance not been deficient by failing to obtain and then provide the SSA and Midtown mental health records to Dr. Parker. The starting point for this analysis is Dr. Parker's testimony at the post-conviction hearing, during which he explained how his assessment of Mr. Suttle's mental health would have changed had he been able to consider the SSA and Midtown records in his evaluation.

Dr. Parker's pre-trial evaluation of Mr. Suttle was based on his interview of Mr. Suttle, the probable cause affidavit, and the mental health records from the jail in which Mr. Suttle was housed (the jail records dated only from the time of Mr. Suttle's arrest for murder and showed "what he'd been prescribed," PCR Tr. at 11). Based on these sources, Dr. Parker testified at the post-conviction hearing that his "primary conclusion[]"was to "rule out schizophrenia," which is "just a medical way of saying it could be schizophrenia." *Id.* at 10. In other words, it was "possible or probable" that Mr. Suttle had schizophrenia. *Id.* Dr. Parker testified that it would "[o]f course" been helpful to have mental health records in evaluating Mr. Suttle. *Id.*

In preparation for the post-conviction hearing, Dr. Parker was provided Mr. Suttle's SSA and Midtown mental health records.[7] He testified that these records would have affected his conclusions regarding Mr. Suttle's mental health evaluation. Specifically, he testified that if he had these records his conclusion would not have been "rule out paranoid schizophrenia," it instead

---

[7] Dr. Parker was also provided mental health records from the Indiana Department of Correction, which dated from after Mr. Suttle's trial. Dr. Parker was questioned at the post-conviction hearing about the SSA and Midtown mental health records separately from the prison mental health records, since the latter were not available to his trial attorney. The Court will only consider the former records and how they would have affected Dr. Parker's analysis in evaluating prejudice.

would have "confirmed the diagnosis" that Mr. Suttle had paranoid schizophrenia. *Id.* at 12. This is at least in part because the records showed that "Mr. Suttle has had a very consistent history" regarding his mental illness; Dr. Parker testified that the records revealed that Mr. Suttle "reported the same sets of symptoms from his first contact with Midtown back in 2000," which was "seven years before he was arrested on the current charges." *Id.* at 12-13.

Dr. Parker also explained how the details of his initial report would have changed based on these new records. His initial report implied that "Mr. Suttle might have been faking his symptoms" in that Dr. Parker "said some of the things that [Mr. Suttle] presented with weren't consistent with the way folks with schizophrenia usually present." *Id.* at 15. This lack of consistency led Dr. Parker to "sort of hint[]" that Mr. Suttle may be "malingering." *Id.* at 16. The SSA and Midtown records, Dr. Parker testified, "remove that [possibility] because they show that the symptoms that he was talking about at the time [of his pre-trial evaluation] which seemed to be a little bit odd have actually been very consistent . . . for years." *Id.*

Based on this evidence, the Court must decide whether there is a reasonable probability that Dr. Parker's updated evaluation of Mr. Suttle's mental illness would have resulted in Mr. Suttle receiving a lower sentence. The trial court's explanation of the sentence makes it clear that such a reasonable probability exists. The trial court explained the mitigating weight given to Mr. Suttle's mental illness as follows: "The Court will find as mitigating the fact that you have expressed remorse, the fact that you do suffer from some form of mental illness. The Court is going to give . . . your mental illness minimal weight because according to Dr. Parker, your diagnosis of paranoid schizophrenia should be considered tentative until you were either observed over a longer period of time or additional medical records became available." Trial Tr. at 331-32.

The trial court left no room for doubt that Mr. Suttle's mental illness was not given

greater mitigating weight *because* Dr. Parker's diagnosis of paranoid schizophrenia was tentative. The trial court's view must be given "great weight" by this Court. *Raygoza*, 474 F.3d at 964. But even without such deference, as a factual matter, the trial court's view is eminently reasonable. Dr. Parker's tentative diagnosis of paranoid schizophrenia is a much weaker mitigating factor than a confirmed diagnosis. This is especially true given that Dr. Parker initially suggested that Mr. Suttle might be malingering, but with the benefit of the additional medical records, concluded otherwise.

Giving a mitigating factor greater weight does not necessarily mean that Mr. Suttle would have received a lower sentence, but *Strickland* does not require that level of certainty. It requires only a reasonable probability of a different result, which is only "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Given that the trial court made clear that it would have given greater mitigating weight to Mr. Suttle's mental illness under the very circumstances present here—an assessment that is reinforced by the record before the Court—and that Indiana recognizes that mental illness can be of "substantial mitigating value," *Gambill*, 675 N.E.2d at 678, there is at least a reasonable probably that the trial court would have given him a lesser sentence had his trial counsel obtained and provided to Dr. Parker the readily available SSA and Midtown mental health records.

Accordingly, Mr. Suttle was prejudiced at sentencing in the manner contemplated by *Strickland* by his counsel's deficient performance.

## IV.
## Conclusion

Mr. Suttle pursued an ineffective assistance of counsel claim in state court. Such a claim requires two showings—deficient performance and prejudice. The Indiana Court of Appeals in *Suttle II* did not address the performance prong of *Strickland*, and applied a prejudice standard that

is contrary to *Strickland*. This Court's review of Mr. Suttle's ineffective assistance of counsel claim is therefore *de novo*.

At Mr. Suttle's sentencing proceeding, the state trial court gave Mr. Suttle's mental illness little mitigating weigh because Dr. Parker's diagnosis of paranoid schizophrenia was tentative. As it turns out, there were readily available and relevant mental health records that Mr. Suttle's trial counsel failed to provide to Dr. Parker, and this failure constituted deficient performance. Had his trial counsel done so, Dr. Parker would have concluded that Mr. Suttle was not malingering, and this would have removed any doubt as to whether Mr. Suttle suffered from paranoid schizophrenia. This, in turn, would have led to greater weight being given to Mr. Suttle's mental health diagnosis as a mitigating factor—his primary mitigating factor at sentencing—and the concomitant reasonable probability for a lesser sentence. Accordingly, Mr. Suttle has demonstrated that he received ineffective assistance of counsel during his sentencing proceeding.

Accordingly, Mr. Suttle's petition for a writ of habeas corpus is **granted**. The State of Indiana shall grant Mr. Suttle a new sentencing proceeding in Marion Superior Court Case No. 49G01-0705-MR-76663 within 45 days after issuance of final judgment in this case.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  11/23/2016

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

James H. Suttle, Sr.
174107
Indiana State Prison
1 Park Row
Michigan City, IN 46360

Electronically Registered Counsel